The next case for argument is 14-1253, and I'm sure I'm going to butcher this, but it's Mr. Langton. Mr. Chavey, may it please the Court. The District Court erred in its claim construction. Under the proper claim construction, there is no infringement. Limitation of Claim 1 requires a sliding means being displaceable on the tube either carrying means. The correct construction of displaceable on means some context, some abutting, engaging. That construction stays true to the claim language and aligns with the patent's description of the invention. Where in the record did you ask for that construction? On the summary judgment motion, Your Honor, Risa had moved for summary judgment of willful infringement that was denied. That issue came up. We argued legally that displaceable on means context and engaging. That's where it's in our opposition. It was a legal argument. But there was a claim construction that preceded that, and this term was not in play in that whole claim construction proceeding. Under SEDMED, SEDMED case. Is that right? Am I right about that? You're right about that, yeah. Well, it wasn't in play, but in Dependent Claim 2, the word on was in play. I'm asking you about the term that you're raising here as a claim construction question. When you went through claim construction below, was this term in play? Yes, it was. We proposed the claim construction, which the district court adopted, but the term on itself was not in play because on means on in our interpretation. Well, the claim construction that you proposed does not result in the resolution you're seeking here, right? You're seeking a further claim construction beyond what you originally proposed in your claim construction, right? Well, I think it's consistent, though, Your Honor. I agree that the word on wasn't disputed when we proposed the term because it came up on claim construction. Yes, is this a means plus function term? We said yes. The sliding means is an annular structure. Everybody agreed with that. The court agreed with us. And what was the function? We proposed being displaceable on the tubular carrying means. Everybody agreed with that, too. And the district court in the claim construction order adopted that. But I agree that the term on itself was not in play or disputed because it seemed so evident. And why is that? Well, why is that? Because on… And then the only way that it was raised in the summary judgment context was through the affidavit of Mr. Ortiz, which the court rejected, right? Well, the district court struck parts of Mr. Ortiz's declaration. That's true, but… Oh, but that part? Yes, that's true. Well, no, I disagree because he was not a claim construction expert. Legal arguments, this is the first part of the infringement test. We presented that in our papers. I don't understand your answer to Judge O'Malley's question. Were the portions of his declaration that were struck relevant or not relevant to what you're arguing? It's relevant to the second part of whether or not the accused's instrumentality meets this limitation, yes. He was not submitted as a claim construction expert. I think that's an important fact. Can I ask you on – I'm going to change the topic a little bit. The infringement trial was just about the resilient restoring forces providing arrestment holding the reflector element. Is that right? That's correct. Can you try to explain to me what your non-infringement position was on that question? And this was in Mr. Ortiz's declaration, too. Struck parts of Mr. Ortiz's declaration, but one part. And that trial was the limitation in Claim 1 that the resilient restoring forces provide – in other words, I can read it – provide the arrestment. We don't do that. We don't rely on those frictional forces to provide the arrestment. We proposed that construction in the district court, adopted our – our proposed district court adopted our proposed… How is it that you don't rely on – I'm trying to picture this. So, I mean, one, you have the – I forget what it's called – the stretcher or something coming down from the – so we have the umbrella that's out horizontally, right? And you have the stretcher coming down, attaching either to the – to the annulus. And then that annulus is either moving all by itself along a pipe and bumping into the bearing member, right? So it's like in the patent. Yours has a bearing member essentially like a tube of some sort, and the thing is coming, and there's a little ring inside here, so it bumps into this, right? Right. So in what way is that in any way different from something that, as I say, is an arrestment that prevents the resilient forces from moving? No. The claim, though, requires the resilient restoring forces provide the arrestment. As Mr. Ortiz testified in the accused instance… The restoring forces are – are they not the – essentially the vertical forces from the umbrella pushing down on the stretcher? Yes, on those… So it doesn't really matter whether you block it this way or whether you block it this way. I agree. I know the claim. So we don't do that because the resilient restoring forces, if you see, don't provide the arrestment. What we do, and Mr. Ortiz testified at trial, hits that tube. That's the only arrestment that's provided. Why is that? Because of the advancement. Our structure doesn't – our device doesn't do what's in the patent because it'll sit there and flow along backwards and forwards. If there was no tube back there, it would go flying out the back end. But there is. Right. It provides the arrestment, not the resilient restoring force. That's different than what the court… But you proposed the construction. Exactly. The court accepted all the constructions, and you go to the jury, and the jury finds infringement under your construction. It's the best possible world that a defendant could be in, and the jury still found infringement. Yes. And so you'd have to argue that there was no substantial evidence to support that conclusion. Well, there's some other issues, though, too, about Mr. Critchever's new slides that came in. We raised that. In a brief, we discussed that. There was nothing other than… Yeah, but his – the trial court carefully went through that and said there was nothing in the slides that is inconsistent with his report. The slides may not have been a part of his report, but experts use demonstrative aids at trial all the time. The court said those didn't even go to the jury. They were demonstrative aids. I don't understand. I mean, when I read the brief, and you're saying this is the absolute worst thing that the trial court did, and yet it seemed to me the most easy one to conclude that the trial court had the discretion to allow that in. You've used the discretion, Your Honor, or our opinion. It just flies in the face of Rule 26. It has to be – Rule 26 requires a complete statement of all opinion, the facts are data. You don't point to any new opinion that was in those slides. You just say the slides weren't in the report in that fashion. The trial court specifically said there's no new opinion, and you don't point to any new opinion in your briefing. Oh, but Rule 26 requires more than just a statement of the opinion, Your Honor. It requires any exhibits used to demonstrate that opinion. No, it doesn't. No, it doesn't. But it doesn't say that if you're going to use a demonstrative aid in front of the jury that you have to put it in your report. Well, we disagree, Your Honor, because those were the basis. Other than those slides, which we got the night before his testimony at trial, if he wants to state what's in his report and give the conclusion, we're happy with that. The reason is we were given the opportunity to cross-examine him on those slides. If he had seen those slides, maybe we would have gotten our own expert. Maybe we would have deposed him. We didn't depose him. What was in the slides that was a new opinion? His explanation in the series of 24, almost like a short little snippet of video, how the sliding means supposedly operate. He flipped through it. It's almost like a movie. So it's a nicer way of showing it to the jury, but is there any – you didn't argue below, and you haven't argued here, that there was an actual new opinion about how the sliding means operate. Well, I disagree, though, Your Honor, because that – So tell me where you argued, either below or here, that it was actually a new opinion versus just a fancier way to describe his opinion. Not necessarily a new opinion, but not a requirement of Rule 26. It should have been included in his expert report. So we could have cross-examined him. So we could have called our own expert. The answer to Judge O'Malley's question about how we can transcend the substantial evidence standard with regard to a jury verdict is because of this evidentiary thing. So if we disagree with you on that point, where are we in terms of overturning the jury verdict on substantial evidence? Well, what never got to the jury is our point, Your Honor, is the requirement of sliding means being displaceable on the duplicative carrying means. The district court erred in its claim instruction, and it was considered by the district court. On the reply in the summary judgment, Risa's expert came in and gave his opinion on reply of what that term means. And from the district court's summary judgment decision, apparently agreed with Mr. Critchover. But that's not consistent with the intrinsic evidence. That's how there's no infringement, is that limitation. And why is that? Because the intrinsic evidence on appears two other times in claim one. I agree that you're correct on the merits before you could win on the infringement side. No, I agree. Yeah, that's true. Your time is running out, and I want to talk to you about the jury instruction. Assume with me for purposes of this question that the jury instruction about personal liability of Ortiz and whoever the other fellow is, is plain error. That it is also, there isn't even an argument that it's non-prejudicial in the usual sense, namely that the evidence would have required a finding of personal liability, even if there had been a correct instruction. Those arguments, I think, are not even made. But there is, and the district court didn't disagree with either of those two propositions. The district court said, and this is what Risa says here, it just doesn't matter here because the partnership was held liable. And as partners, the individuals are liable for the partnership's liability. Now, I can imagine ways in which there would be a difference in consequence, but I'm just imagining them. Tell me what difference in consequence there actually is according to whether the individuals are subject to a personal liability judgment in this case and the situation where they're not. They're not because of the standard for the erroneous jury instruction. It has to be both erroneous and prejudicial. Remember, the prejudicial standard is very easy to meet. Could not have changed the result. I'm assuming that. The district court also assumed that. The district court nevertheless said there's no challenge to B2, B2 Pro, I guess, the partnership's liability. And when the partnership is liable, the partners are responsible for that liability. So there is no, say under Federal Rule of Civil Procedure 61, there is no essentially harmful error to correct. We disagree. Tell me what the concrete difference is. That presumes that the jury found that the partnership acted through these other individuals. That presumes that. You did not argue here that the partnership's liability is indirectly affected by the erroneous instruction about the individual's liability. You brought this up in response to arguments raised in the response. You did not argue here that the partnership's liability is a problem. No, I agree with that. I agree with that. It's trying to transmit that to the individuals, I think, where the prejudicial standard comes into play. That presumes that B2 Pro was found to be an infringer because of some conduct by somebody. I mean, it's an entity. It doesn't – it obviously works through people. We have to assume that. But it could work through anybody. It doesn't have to be those two individuals. The jury could have found – could have found that individuals, the other workers, were not active in the partnership. Could have found that. And therefore, the only way B2 Pro was a direct infringer was through Langton and Ortiz. And the jury found Langton and Ortiz infringed using that wrong jury instruction that direct infringement could include inducement. That's why you're arguing. Everybody presumes that B2 Pro acts through whoever they want to. Whatever worker does infringement – What is the relationship between key lighting and B2 Pro? I mean, there was a lot of cute testimony here. It looked like key lighting didn't even pay its proper dues to, say, an active corporation. And so, I mean, the fact that there was some reference to it being a corporation seemed to be just a fiction. Well, it wasn't. The testimony from Mr. Ortiz was that it's a vast corporation. All dues are paid up. He didn't say it was a valid corporation at the time of the act alleged. What he said is, well, there were lots of times when it wasn't a valid corporation. And other times we make it go ahead and pay and it becomes valid again, and then it becomes invalid again. And that's the best he ever said about its status. He never said it was an active corporation. But he did say it is a Nevada corporation, and at the time of the testimony, all dues have been paid up. It is in my – they are very poor record keepers. Yes, Mr. Langton signed something to the state of New York. They're bad record keepers. But Key Lighting Inc. is a corporation, a Nevada corporation, and although the jury found B2 Pro as a partnership, it is, according to Mr. Langton and Mr. Ortiz, a DBA. But they also said they're two separate corporations. In some of the documents. Two separate businesses. Yes, yes, yes. And that B2 Pro was the one doing the work and sometimes just used the name Key Lighting. But, again, they're not attorneys. They're people who do – like Mr. Ortiz, 15 years in the lighting business. And Mr. Langton also, years in the lighting business. Can I go back to – we'll extend your time because I think we've got a few more questions. Just to make sure I understand where you concluded with Judge Taranto and your discussion with him, your view is that the relevance of the jury instruction and the reason it hurt you is because the jury might have relied exclusively on that portion of the jury instruction to find liability by the partnership, B2. Yes, Your Honor. But you haven't appealed the finding of liability by B2, have you? Is that part of this appeal? We appealed the final judgment. If that's specifically – But you haven't – have you raised here the fact that B2 as a corporation should not have been liable? No, no. So how is that argument preserved here on appeal? I mean the argument that you're saying that, well, the reason it's relevant is because B2 – we should assume that the jury wouldn't have found B2 liable, and therefore we're only left with these two partners. When that issue is settled and done for purposes of our appeal, that B2 as a partnership is liable. Do you see my question? I understand. It goes to the individuals. I was arguing that the two individuals, Langton or Keith, could not – because the argument was raised by Brisa. Well, B2 pros are infringers, therefore they must be infringers also. But my argument is, oh, that's not actually true. The jury could have found that Langton or Keith were direct infringers using the incorrect jury – And the consequence of that would be everything would fall then if the jury instruction were incorrect. But you haven't appealed the finding of liability by the jury of the partnership. So it seems to me that that door is closed in terms of doing anything about that. Am I wrong about that? I think you're wrong, Your Honor. I think the issue needs to be addressed also because of the claim construction issue. If you agree with my claim construction – Well, yeah, okay. I appreciate that. Let me just spend a couple more minutes, and I ask your indulgence, just on jury instruction number 18, and that's the willfulness question. You challenged – you did not object to the jury instruction. Am I correct about that? At the time we did on the record, as we note in our brief, we raised an objection after the jury – there was a time lag, but as I said in the blue brief, we did object – I can find the slide in the blue brief. But you concede there was no timely objection to the instruction? Not necessarily because we raised it with Judge Conte that we want to get in after – other evidence of other claim instructions we had proposed because it's not going to the jury. I'm paraphrasing what we said. Judge Conte said, denied objection, those for the record. We felt we preserved our objection. It's not that the jury instruction was wrong. It probably does state the right law in the Seagate. The problem is Judge Conte didn't decide the objective factor. And this is similar to the recent Stryker v. Zimmer case. So why are you arguing on appeal the jury instruction here? You didn't file a JMAL just on the issue of willfulness, the failure to find objective reasonableness. None of that stuff came up other than – as I understand it – other than an objective to the jury instruction. Am I right about that? Well, you're partially right. We did file a motion for new trial. It included the erroneous jury instruction. Yeah, but I'm saying outside – you conceded to us that there was nothing in and of itself in the jury instruction. The real failure here, the alleged failure, was that the judge, as a practical matter, either before or after it went to the jury, didn't himself analyze the objective reasonableness. Where is that argument preserved? We raised an objection. We feel it was in the record. Not at the time the jury instruction was objected to, but during – right before the trial. I find it in the transcript. Before the trial, you said – Well, I don't want to take your time here, but even whatever – Oh, go ahead. Opening brief, page 32. Cites the transcript. Sorry, A315. I'll just read it. I'm sorry, A315? 315, line 24. Okay. There are defendants advised – I'm just paraphrasing – the district court at trial that evidence may come in on the issue of whether defendants acted in an objectively reasonable manner. Are you sure we're on A315? 315, line 24. That said, we just want to bring to the court's attention. I believe that's right. Is there an issue in this case? The next page goes – All right, and how – so this was your objection, and how did you preserve it? You mentioned that you asked for a new trial. Yes. But your request only had to do with your belief that you had infringement theories that you should have been allowed to present. Absolutely. The first objective factor is determinants of willfulness issue. We proposed constructions that – first of all, the sliding means being displaceable on the tubular carry means. Right, but you never argued that the fact that the judge allowed the jury to make some conclusions with respect to the objective prong was itself error. This is – I think this is similar to – I think we did a new trial. This is similar to Stryker v. Zimmer. I mean, this is a case actually worse than Stryker v. Zimmer, the recent – back last month, where in that case the district court, apparently after the trial, did decide the objective factor but didn't give enough weight. Here, Judge Conte didn't give it to the jury. Well, as I understand Chief Judge Crowe's question, or maybe in any event it's my question, where did you ask the judge himself or herself to decide whether your non-infringement defenses were objectively reasonable? One, in the objection I noted in the transcript, and then the new trial. We asked for a new trial based on that, based on the willfulness issue. And otherwise, I mean, there are other pleadings before that. I mean, in the trial brief, we filed the trial brief with Judge Conte on the summary judgment motion. The motion was summary judgment for willful infringement. And in the new trial motion, arguing that your non-infringement defense was objectively reasonable and therefore there cannot be willfulness, did you rely on the single infringement issue that went to trial or only on elements found against you on summary judgment? I'd have to look at it just to be sure on that. But we must have raised all of those issues. I just don't have it in front of me right now. How much money did the other side ask for the jury to award? That varied. The patent infringement was, I believe, $2.4 million. For the trade dress claim, which we prevailed on, it was zero. Although they had argued they should get the $2.4 million also. But on the patent claim, they asked for $2.4 and they got $300. Correct. All right, we've gone way ahead. We'll restore your two minutes of rebuttal, and we'll add eight minutes to the other side, although we're all hopeful that you won't need to use them. Thank you, Your Honor. I'm Gary Servant from Brzezlik Technik. I'm Hans Werner Brzezik, elected in Brzezik. May it please the Court. I wanted to respond to several arguments that were raised this morning. I wanted to start first with the claim construction issue. The term here is sliding mean displaceable on the tubular carrying means. The parties agreed to the construction of the term, and the Court adopted that construction. The dependents or the appellants here never requested during marketing hearings, during claim construction hearings, that the phrase displaceable on should be construed something different than what they already agreed to. What they're trying to do now is take the construction of word on in claim two, where the phrase is supported on. The agreed construction there was abutting and engaging. There was nothing about contact. They're trying to take that phrase, collapse it into the definition of contact, inject a new term in here, collapse that term into on, and port it into claim one to a term displaceable on. Can I change the subject quite radically to the things that at least cause me some concern? The jury instruction about the individual's liability. The district court did not say, and you do not argue, that that was a correct instruction. The district court did not find, and you do not argue, that it was non-prejudicial in the usual sense that the evidence was so strong that not only could a jury find individual liability under proper instruction, but it had to. The district court found, and you argue only as to that, that it simply does not make any difference whether there is a judgment of personal liability or simply indirect responsibility for the personal liability that attaches to the partnership. If that's the case, tell me why you would not give up the personal liability judgment against the individuals. Well, Your Honor, there are a couple of issues here. So the first part is that the only issue they're taking with the instruction number 14 is the second sentence, that dealt with personal liability of corporate officers. It does not affect corporate liability of key lighting. My question was not about that. They do not argue against liability of key lighting or against B2Pro. I want to know why is it that you would not stand here and say we will give up the personal liability of the individuals? Well, we can give up the personal liability of… The personal liability judgment, I'm sorry. We can give up the part of the instruction that awarded personal liability as officers because of their partners in the partnership B2Pro, which was found to be partnership, which they didn't object. And the partnership, what is directly infringing the patent, they're liable personally as partners of partnership B2Pro. That does not itself support a judgment of personal liability against them here. You might go after them for personal liability for the partnership's liability. Are you willing here to say that you will give up the judgment of personal liability for the individuals? And if not, it must matter to you, in which case, how can we possibly… Well, Your Honor, there was also a judgment of personal infringement by Langton and Ortiz separately from instruction number 14. How do we know that's separate from the instruction? The instruction, that may have been, in fact, the sole basis on which the jury held them personally liable. Well, they held them personally liable as officers, whereas the instruction number, the other parts of the jury instructions were basically saying that the individual are personally infringing. So there's a difference between infringement under corporate, by corporation, infringement by B2Pro's partnership, and infringement by them as individual as opposed to personal liability for the act of the corporation. Let me put all that aside, which appears nowhere in your red brief. Can you answer straight up, are you willing, standing here, to give up the personal liability judgment against Langton and Ortiz? We're not ready. Why not? Because the personal liability flows from their partnership as B2Pro. The personal liability judgment does not flow from the partnership liability. And there certainly was no instruction that they can be held liable solely as responsible for the partnership liability. Why does it matter to you that there is a personal liability judgment against Langton and Ortiz? Well, I think it is a moot point because they are partners of B2Pro. So why don't you give it up if it's a moot point? I think that at this point, to the extent that it would help them avoid liability, I don't know. I have to look at all the different issues associated. To the extent they are able to avoid liability. Which is to say there is some possibility it actually matters. No, I don't think it matters, Your Honor. Do you think B2Pro is judgment proof? Is that what you're concerned about? It's very possible B2Pro is judgment proof. It's very possible Key Lighting is judgment proof. And as you've seen in the record, there was a lot of discovery issues and sanctions for non-production. And we had a very difficult time tracking things down, including financials documents. But my problem is that the possibilities that it might matter are the very possibilities that seem to me to make the reasoning, if they're real, to make the reasoning a sole reasoning on which you defend and the district court found that you may as well leave them in place, notwithstanding the plain, possibly prejudicial error of the instruction. It seems to me to erase that, that it might actually matter. I agree with you, Your Honor. I do not believe it matters. But just given the posture of this case and the history of this case, I think that the instruction number 14 is not prejudicial to them. Isn't it true that the district court also separately from this discussion of the partnership liability said that there was, and I think the words were, there was abundant evidence of their personal liability, and you had separately brought claims against them in their personal capacity? Correct, Your Honor. And that's what I'm trying to get at. Your red brief does not argue that the evidence is so strong, whatever abundant it is, so strong that a correctly instructed jury would have had to find them liable. It does not argue that. It merely says there's sufficient evidence so that there is not a JMOL entitlement of non-infringement on their part. Correct, Your Honor. But the jury found them personally infringing, not necessarily personally liable. And it might have been based on that instruction. No, not necessarily. Not necessarily. It might have. It might have. It might have. No, the instruction, the instruction number 14, the second sentence says personal liability as officers because of corporate infringement, not because of their individual infringement. The jury had enough evidence to find them individually infringing, and therefore awarded liability for their individual infringement. So while we're happy to take their personal liability corporate officers out of the case, keep Key Lighting infringement in, keep B2Pro infringement in, they would still be liable as partners of B2Pro personally for B2Pro direct infringement, whether it happened, it was done by them individually or by anyone else at B2Pro, as long as B2Pro infringes, and they're the sole two partners. But that's the whole point. We've come full circle now. Because that's why, if that's the position and the liability finding for B2, the judgment holds for B2, then as you suggested, it was moot, as Judge Taranto suggested, then why don't you agree to take it out? I understand the point. We would agree, Your Honor, if that is the path, how the court is viewing it. We originally viewed it as there is no imputation. There was no instruction that somehow the liability of individuals somehow transferred into direct infringement by B2Pro. There was no instruction for the jury to find that. The jury found B2Pro directly infringing, and therefore they're liable. But given your questions and your explanation, I think we're ready to… Can I ask you… We're willing to concede that that part doesn't matter, and we would not care about the personal liability as long as B2Pro is found liable, and they're direct infringement, they're liable as corporate, as partners of B2Pro, and as long as Key Lighting is held liable for its direct infringement. Can I switch to Wilson? Yes. Can you explain, first of all, put completely to one side whether it matters that the jury was asked to address the objective reasonableness portion of SIGIT. Yes. The district judge didn't discuss that, didn't say here's why their non-infringement defense was objectively reasonable. So I guess I have two questions. One, did they ask the judge to decide that? I don't think you say not in your red brief. And second, explain, just explain why their non-infringement position is objectively unreasonable. Okay. So the judge, Judge Conte, in the motion for new trial, stated that their positions were not reasonable. He wasn't going to overturn the verdict because the claim constructions on which they found to be infringing were the exact claim construction that they proposed. So he's basically saying the claim construction didn't go to the jury. The claim constructions were reviewed by him. He understood the claim construction. And he said that based on your claim construction, you were found to be infringing. That takes care of the objective problem because he didn't – I'm sorry. How could that possibly take care of the objective problem unless you're standing here and saying that every loser has made by definition an objectively unreasonable argument? No, the claim construction itself was something that they presented. Right. So what – There was no dispute on claim construction, but somehow the claim construction – Why was it? I guess what I'm interested in is the explanation for why taking the claim constructions as a given, their non-infringement defense was not objectively reasonable. Wrong, evidently, but objectively reasonable. Okay. So from the non-infringement defense, which went to the jury on one term, was based on their claim construction and their structure and operation of their device. Every part of their accused device, the claim one read on every part of their accused device. So the jury was asked as to whether their defense of non-infringement, which is a factual matter, was objectively reasonable. And Mr. – That is a matter of law, and I'm still waiting for the explanation for why it was objectively unreasonable in your view. Taking as a premise that it was incorrect, that the jury could properly say, no, you're wrong, this element, whatever this resilient restoring forces element, the only issue that actually went to the jury, that actually does read on your product. Why was it unreasonable objectively for them to argue the contrary? Well, because under the Mayer case, the question, when the defense is based on the legal issues, then the court should be deciding the question of law. When the objectable prong is based on the factual, the defense of that is based on the factual issue, under the Mayer case, it can be decided by the jury. Is that – I mean, I'm trying to remember Seagate. I mean, we've got the subjective prong and the objective prong. Right. And you're saying that under the objective prong, we've bifurcated and we've said claim construction is for the court and infringement questions are for the jury? Yeah, in the Mayer – What about validity? Because those questions are part fact and part law. So under the Mayer – in the Mayer case – You say the Mayer case. Are you talking about Seagate? No, no, no. It's actually Mayer – Well, we actually said it in part, did we not, that as to the objective prong, underlying facts are to be decided by the jury. Correct. And then only the legal implication of those facts ultimately is what the court decides. Correct. And that's where the court here said the only legal implication is whether or not the claim construction was right or wrong because every other determination was a question of fact. Correct. And in this particular case, Judge Conte looked at the legal – at what the jury found based on factual issues. They found it to be infringing. Looked at how the case progressed given that the infringement was based on the claim construction that they proposed and they agreed. So he felt the objective prong, he didn't want to overturn. The only thing they argued that made their defense as objectively reasonable is that they had this one other displaceable on claim construction and a piece of evidence that the judge had excluded, that those were the things that made it reasonable. And he said that those are the only legal questions and legally they have no leg to stand on. So as a result, the jury's determination as to the factual element is consistent with Barb, right? That's correct. They never argued – they waived their arguments on claim construction during the Markman hearing and your pre-trial. So their claim constructions are – their argument on claim construction, not only is it wrong, but it wasn't even in the case. What the claim construction that were presented there in the case are the claim construction that they agreed to, and under those construction, they infringed. What they're trying to do now is rework the claim construction back into them and say, okay, our claim constructions are not infringing, and therefore the objective prong is not met. But they never presented it. On 822, which is where the district court is discussing the attorney's fee section, which I'm sure you want to get to here. But in passing the district court judge and rejecting the attorney's fee says, moreover, some of the positions advanced to trial by defendants had merit. Do we know what he was talking about there? Well, I think that when they're talking about the positions, they were talking about possibly damages. There was a discussion of what actually is happening with respect to the forces. How is their device structured? Because on summary judgment motion, Judge Swain was asked to decide all the elements. The problem with this last element where resilient and restorative forces come in is that it's hard to visualize on papers. So that's why she asked or she decided that should be brought to the jury. So during the trial, there was demonstration of what the umbrella is, and the jury had the ability to see it, which is something that the district court judge didn't have in front of her when she was ruling on summary judgment. So can you explain, please, why the position that they took about the resilient forces at trial is not just wrong, but objectively unreasonable? Okay. I can, Your Honor. At A271, this is the patent itself. Column 4, line 17 through 25. This passage refers to the umbrella reflector shown in figure 1 on page 269 of the patent. And what it discusses is the idea that when you open the umbrella and it passes the plane, what are called death center plane, and it goes past that point, the forces of the umbrella push the stretchers in. And once they're pushed in, you can't open the umbrella. There's a force now you have to overcome to close it. So once you open it, it sits there open. Now you have to overcome to close it. If you look at the passage in the patent, it says that the stretchers are dimensioned in such a way that you can get to that point, because if the stretchers are too long, you'll stop before the death center. If the stretchers are short enough, you'll get right through it. I'm going to read through the patent. Besides, the construction is dimensioned such that sliding means can be slightly moved beyond this position corresponding to the death center of the articulated levers toward the bearing body so as to engage the ladder. As a result of the restoring forces, the forces that are pushing the sliding means, and the impact of the bearing body, the sliding means is reliably retained in this position shows, which is the open position. And that's exactly what this claim term is talking about. Now this description refers to Figure 1. That's exactly the structure that they have, except that they're arguing, and they were arguing in the district court, that somehow you have to ignore this passage, and the fact that the sliding means is touching the bearing body, somehow it creates a non-infringement argument. But the passage explains that the resilient restoring forces pressing against the bearing body retain the sliding means in that position, so when you have to open it, close the umbrella, you have to overcome them. That's all the Claim 1 element requires, and that's exactly what they had. So the issue was what is the resilient restoring forces? They had an argument about essentially not the bearing body doing the blocking, but something else, and I think your point is it really doesn't matter because the claim is just about something stopping the restoring forces. That's correct. It doesn't matter what stops it. That's correct, and as a matter of fact, what they had is they had what we would call the bearing body. They had a structure. They had another structure fitted into it to extend slightly past the tip. So whether you go slightly below the tip or you go up to it, it doesn't matter because eventually whatever that structure is, that becomes the bearing body, and you're touching against it. Their position on non-infringement was unreasonable. It was difficult to see on summary judgment because, again, we're talking about forces, and it's hard to visualize. I appreciate the difficulty. But that's really what the trial was about, showing what's in the umbrella, how the forces are acting, and what's in their device. Mr. Kritchever, the expert for Brise, actually pointed to infringement by looking at their device. He didn't do it by pointing to the slides, by pointing to demonstrative. Demonstrative are basically showing what is happening in the umbrella, exactly what I just described. That was in his expert report. That was in his claim charts. He's basically showing the jury, this is how you open the umbrella. This is how the sliding means or the body slides along the tube. This is what happens when you get to the point of zero death center, and this is what happens when you go slightly past it. That's in the patent. It's in Figure 1. It's in their product. They never argue that the product doesn't have that structure. Let me tell you, we don't want to – we're already way beyond time. You want to take like really a minute to discuss your cross appeal, or we can rest on the briefs if that's okay. Your Honor, there are three elements why we believe that the Judge Conte decision on the attorney's fees was error of law. Number one, he applied the wrong legal standard for exceptional case under the octane standard. But he says that at the beginning. He sets forth what was the standard at the time, correctly what was the standard at the time, and no one replies. But his analysis seems to be in line with octane, does it not? I mean he talked about the totality of the circumstances. And his analysis itself seems to me not that out of line with what he would do if he had octane before him now. Your Honor, he was focusing on sanctionable conduct. There was a litany of non-sanctionable conduct or litigation misconduct for which descendants were not sanctioned. And if I can just cite some of the – Well, if it's in your brief, I don't know that you want to take the time. Actually, there were two motions, even one motion to compel which defendant filed in which Judge Dallinger said that these arguments were disingenuous, baseless, and lacked merit. This was part of their motion to compel, which we – it had five or six elements in there. On one element it says your arguments are so far off base that I find them disingenuous. And that was one motion. There was another motion where they argued that somehow plaintiffs were precluded from taking further discovery. They thought that they had the ability to have discovery, and it was extended to both them and the plaintiffs. The order that Judge Dallinger issued was clear that because of their misconduct, plaintiff discovery was – only plaintiff discovery was going to be extended by 30 days, not theirs. They argued in front of Judge Dallinger that wasn't the case and they misunderstood it, and he chastised them for it. So your arguments here are completely false, completely false. And this is part of – he actually called it –  we didn't ask for sanctions. We basically – this was part of when they didn't produce financial documents. He admitted the financial documents, and it was part of the argument. So what you're saying is even if you buy the proposition that one sanctions and some attorney's fees were already shifted, that to the extent that there was other misconduct where there was no earlier shifting of attorney's fees that they could support an award of attorney's fees. That's correct, Your Honor. There were – so we had – we actually told the court that we're not looking for compensation for the conduct that was sanctioned. We're looking for the attorney's fees minus whatever we already compensated. And the elements where Judge Dallinger didn't sanction them, they found their conduct to be unreasonable. If I can just cite to A121, A119, meritless, entirely disingenuous arguments. A121, defendant's omission is blatant and misleading and unprofessional. This was not conduct that was sanctioned because it was part of their motion. And he actually, in one of the motions that Judge Dallinger – or one of the orders that Judge Dallinger issued, he actually said that some of this can come up to a threshold of Rule 11 if it was to be pursued, but he didn't go any further. And plaintiffs didn't pursue Rule 11 motion. But in addition to the sanctions that Judge Conti was looking at, there was enough unreasonable conduct for which they were not sanctioned that didn't come into consideration at the court by Judge Conti. All right. Well, we'll restore a minute for rebuttal, and we've already restored some of your time. We'll give you four minutes to respond. First of all, on the willfulness issue, my friend cites passages not from the claim. One was from the specification, leaves out the last sentence. Column 4, line 15, line 25 says, in that particular embodiment, any particular clamping or arresting means are not required. That's different than what's in Claim 1. Claim 1 requires that the resilient restoring forces do provide an arrestment. Our position was objectively reasonable based on the claim construction by Judge Swain. She adopted our claim construction where that particular limitation, resilient restoring forces, provide an arrestment, as shown in Figure 1. That's in her claim construction order. Figure 1 shows a gap. Figure 1 shows a gap. It doesn't show what's in that passage quoted from the specification, the written description. That's not the claim. The claim is what's in play here. Mr. Ortiz defended and gave very good analysis as to why there was no infringement based on what the one limitation was at trial. It's important to note that there's some efforts by the plaintiff, Brisa, that the bearing body can be anything you want. It can be a bearing body, it can be two feet out this way or two feet out the other way. It can be anything, but it's not. The claim doesn't allow that. What does the claim say? The bearing body is a particular item, and it has to have a ring of articulated joints. The claim requires the articulated joints to be on the bearing body. So here you have your bearing body. Here comes the joints from the stretchers. At some point, another piece is not the bearing body. It's out here. If the joints are appended on the bearing body, a tube which doesn't contact the joints is not the bearing body. And so Mr. Ortiz did present a valid and good defense to infringement. And we know that. One reason is Judge Swain denied the summary judgment of infringement based on that limitation, that there was a disputed fact issue. Now, on the cross appeal, I think it's important to note the facts. We did produce the 180 umbrella. Time and again, there's a reference. Most of it. The umbrella, the parts, what we had. Right. The parts, other parts we didn't have. But it is true that Judge Dondra, even the order where you were sanctioned, he pointed out unprofessional and improper conduct, both on your part personally and on the part of your client, in multiple places where he said, but I'm not going to rely on those things here for sanctions. They might provide a basis for Rule 11 sanctions later, or they might provide some ability to make credibility determinations later, but I'm not going to rely on those things. They're out there. I find them all improper conduct, but I'm not going to sanction those. Shouldn't the court have considered those things along with the other times where they found your position to be disingenuous and essentially virtually false? Shouldn't the court have considered those things in determining whether to award fees? I think he did. First of all, many of those statements are based on the ruling's assumption that we didn't produce the umbrella, the 180 umbrella. Of course, we did. It's also based on the fact that we hadn't produced responsive documents. That ship is – We have. Four judges said you didn't. I mean, everybody to have considered this in this case so far made the factual finding that you didn't properly produce and even thanked you for that. You haven't appealed that determination. But we did file an opposition that showed that it was erroneous. Remember, this came up on the reply originally. We didn't have the opportunity to respond to that reply, and when we did in the opposition filed January 2011, we explained that the reply was wrong. We did produce responsive documents. It was filed 14 days after his order in January, and then we appealed his later order issuing monetary – You did not appeal any of the sanctions awards, any of the findings with respect – at least with respect to the underlying discovery violation. How can you argue now to us that you didn't commit the very discovery violations that several judges, magistrate judges and district judges, found that you committed? Well, because it came up on the reply argument, which we never had an opportunity to respond to. And when we did respond in January, we showed with facts why documents were produced. And so that's why, Your Honor, we were never given the opportunity. And when we did file our opposition in January, 14 days after the order, we explained that responsive documents had been produced. That's important to note. The district court order said produce the prior umbrella. That's all we had, the umbrella. We produced that. We didn't have the tubes, the lights. We didn't have that. So we produced the umbrella. That's what the district court's order says at page 222. We did produce responsive documents. That came up on the reply argument. We fundamentally at least are able to respond to that reply argument. And when we did, the magistrate judge apparently overlooked it. We raised it again after the issue of the monetary sanctions with the district court and explained that we had produced the documents. The district court overlooked that also. We think that was error. Now, on the cross-appeal, it's important to note. One final thought. Yeah. Defendant Ortiz factually and credibly challenged Brees' case, both on summary judgment. In his declaration, he demonstrated factually. Now, although the district court struck part of his declaration, he demonstrated in that declaration there was no infringement. He also demonstrated no infringement at trial, his trial testimony. Now, we've got to relate to what we were faced with. We took a 30B6 deposition of Brees', Mr. Brees', asking him the basis for the infringement contention. This is in our brief. We asked him, what's the basis for the assailant contention? He couldn't answer. This was during discovery. And we took his deposition in October 2010. Of course we thought discovery was extended through October. We were taking depositions, as ordered by the magistrate judge, in October 2010. It would make sense that discovery would be extended for both parties. Thank you, Your Honor. Thank you. We have the argument. We've got a minute left to respond to the brief response. Your Honor, just quickly, with respect to this new argument about Umbrella not being a reflector, that the judge didn't know what you were saying. Well, wait a minute. That's not dealing with the cross-appeal. You get rebuttal time on the cross-appeal. So that's limited to that, please. Okay. On the cross-appeal, we believe that the judge didn't apply the right legal principle for exceptional case. Did not look at all of the conduct that was unreasonable, only limited to sanctionable. In other words, did not look at the totality of the circumstances. And under this scenario, the district court's decision should be reversed. The court should find exceptional case, or at least remand, for further consideration. Thank you. Thank you. Thank both counsel. The case is submitted. We're going to take a brief recess now.